1

2

3

4

5

6

7

8    IN THE UNITED STATES DISTRICT COURT

9    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ROGER HICKS,

11          Plaintiff,                        CIV S-11-0148 GGH

12      vs.

13   MICHAEL J. ASTRUE,                       ORDER
     Commissioner of Social Security,
14
            Defendant.
15   _____/

16          Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17   Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB")

18   under Title II of the Social Security Act ("Act").  For the reasons that follow, Plaintiff's Motion

19   for Summary Judgment is  DENIED, the Commissioner's Cross Motion for Summary Judgment

20   is GRANTED, and the Clerk is directed to enter judgment for the Commissioner.

21   BACKGROUND

22          Plaintiff, born August 2, 1946, applied on June 4, 2008 for disability benefits.

23   (Tr. at 121.)  Plaintiff alleged he was unable to work since January 30, 2002, due to Reiter's

24   \\\\\

25   \\\\\

26   \\\\\

1

Syndrome[1] and degenerative disc and joint disease.  (Id. at 121, 159, 171.)  In a decision dated September 1, 2009, ALJ Timothy S. Snelling determined plaintiff was not disabled.  The ALJ made the following findings:[2]

> 1.  The claimant last met the insured status requirements of the Social Security Act on March 30, 2004.
>
> 2.  The claimant did not engage in substantial gainful activity during the period from his alleged onset date of January 30, 2002 through his date last insured of March 30, 2004 (20 CFR 404.1571 et seq.).
>
> 3.  Through the date last insured, the claimant had the following medically severe combination of impairments: degenerative disk disease, degenerative joint disease, Reiter's syndrome, and hearing loss (20 CFR 404.1520(c)).

---

[1]  Reiter's Syndrome, or reactive arthritis, is an autoimmune condition, and has symptoms similar to other types of arthritis.  Www.wikipedia.org.

[2]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c).

6.  Through the date last insured, the claimant was capable of performing past relevant work as a sales route driver, a residence supervisor, a warehouse worker, or a bus driver. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.  The claimant was not under a disability, as defined in the Social Security Act, at any time from January 30, 2002, the alleged onset date, through March 30, 2004, the date last insured (20 CFR 404.1520(f)).

(Tr. at 32 - 38.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A.  Whether the ALJ Failed to Utilize the Services of a Medical Advisor to Establish Onset; B.  Whether the ALJ Failed to Develop the Record and Re-Contact the Treating Physician Regarding the Onset of His Assessed Functional Limitations; C.  Whether the ALJ Failed to Properly Credit the 100% Disability Rating Mr. Hicks Received From the Department of Veterans Affairs; and D.  Whether the ALJ Erred in Finding that Plaintiff Could Perform Past Relevant Work Without the Assistance of a Vocational Expert.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v.

3

1  Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence

2  as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d

3  625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The

4  ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and

5  resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations

6  omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more

7  than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

8  ANALYSIS

9       A.  Medical Advisor

10             Plaintiff argues that the ALJ was required by Social Security Ruling 83–20 and

11  Ninth Circuit authority to employ the services of a medical advisor to establish the onset date of

12  plaintiff's disability.  Under Armstrong v. Comm'r, 160 F.3d 587, 590 (9th Cir.1998), an ALJ

13  must call a medical expert where the onset date of the disability is unclear.  But that requirement

14  only applies where a claimant has been found disabled at some time.  Id.  See also Sam v. Astrue,

15  550 F.3d 808, 809 (9th Cir. 2008) (holding that "SSR 83–20 does not require a medical expert

16  where the ALJ explicitly finds that the claimant has never been disabled").  Here, the ALJ did not

17  find that plaintiff was disabled at any time, and he found that plaintiff had not been disabled

18  through the date he was last insured.  Therefore, the ALJ was not required to call a medical

19  expert. See Lair–Del Rio v. Astrue, 380 Fed. Appx. 694, 696–97, 2010 WL 2170996 (9th Cir.

20  May 28, 2010) (unpublished opinion) (noting that burden of proof remains with claimant to

21  prove disability before expiration of disability insured status, and holding that ALJ did not err in

22  not using a medical expert to determine disability onset where plaintiff was not disabled at any

23  time).

24  \\\\\

25  \\\\\

26  \\\\\

1    B.  Whether the ALJ Failed to Develop the Record and Re-Contact the Treating Physician

2  Regarding the Onset of His Assessed Functional Limitations

3              Plaintiff contends that the ALJ should have re-contacted Dr. Lan for clarification

4  of the onset date of plaintiff's limitations.  In this regard, Dr. Lan submitted an undated RFC

5  assessment, which was stamped "received" by the representative's office on May 26, 2009.  (Tr.

6  at 390-95.)  This report, although undated, states that it is a "current evaluation."  (Id. at 390.)

7  The ALJ rejected this report based on these facts, because it concerned plaintiff's condition well

8  after the pertinent period, which was from January 30, 2002 to March 31, 2004.  (Id. at 36.)  The

9  remainder of the record indicates that plaintiff's first contact with the VA in Livermore, where he

10  was Dr. Lan's patient, was on January 12, 2007.  (Tr. at 224, 257.)  Dr. Lan first began treating

11  plaintiff in 2007, three years after plaintiff's date last insured.  (Tr. at 246.)

12              In general, medical reports should not be disregarded solely because they are

13  rendered retrospectively.  Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir.1988).  In fact,

14  retrospective medical reports can be relevant to a prior period of disability.  Id. Considerations to

15  be made in whether to give such a report less weight include: whether the report specifically

16  assessed plaintiff's functional capacity prior to the insured's expiration date, whether the medical

17  reports created during the time period at issue made only limited references to limitations in

18  functional capacity; whether intervening circumstances such as a car accident exacerbated the

19  medical condition; and whether the retrospective opinion conflicted with the same physician's

20  earlier opinion.  Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir.1995).  The undersigned

21  might also add that certain types of afflictions, e.g., mental retardation, absence of an extremity,

22  are understood to be permanent and unchanging much over time, while others are not.  The more

23  permanent and unchanging, the more relevant the later medical reports.  On the other hand,

24  progressive ailments, such as slow growing cancer, tend to make the later medical reports

25  unlikely to be helpful to a distinct earlier period of time.  Even plaintiff conceded in 2008, that

26  his Reiter's Syndrom had "gotten worse over the years."  (Tr. 159).  Furthermore, "claimants

1    who apply for benefits for a current disability after the expiration of their insured status must

2    prove that the current disability has existed continuously since a date on or before the date that

3    their insurance coverage lapsed." <u>Flaten v. Secretary of Health & Human Services</u>, 44 F.3d

4    1453, 1462 (9th Cir. 1995).

5            Because this treating physician had no contact with plaintiff during the period at

6    issue, his opinion is not relevant and there was no reason to re-contact him.  The regulation cited

7    by plaintiff, stating that the SSA will seek clarification if a medical report either contains a

8    conflict or ambiguity, does not contain all the necessary information, or does not appear to be

9    based on medically acceptable techniques, only applies if the report is relevant to the time period

10   at issue.  <u>See</u> 20 C.F.R. § 404.1512.  This report was denoted a "current evaluation," and had to

11   have been made after 2007, when Dr. Lan first started treating plaintiff.  Therefore, it could not

12   have assessed plaintiff's functional capacity prior to the expiration of plaintiff's insured status.

13   As Dr. Lan had no professional relationship with plaintiff during the period at issue, it is not

14   possible to determine if this RFC conflicted with any earlier opinion.  As Dr. Lan's "current

15   evaluation" was not offered as a retrospective opinion of plaintiff's impairments between January

16   30, 2002 and March 30, 2004, the ALJ's determination that it was outside the relevant period

17   was not error.  <u>See</u> <u>Capobres v. Astrue</u>, 2011 WL 1114256, *5 (D. Idaho March 25, 2011).

18            As discussed in the next section, the medical evidence pertaining to the period at

19   issue supports a finding that plaintiff was able to perform substantial gainful activity prior to

20   March 30, 2004.  Plaintiff has the initial burden of showing that he is unable to perform any work

21   due to a medically determinable physical or mental impairment. 42 U.S.C. § 1382c (a)(3)(4);

22   <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir.2005).  In light of the evidence in the record, the

23   ALJ correctly determined that plaintiff had not met this burden.

24   \\\\\

25   \\\\\

26   \\\\\

1          C.  Whether the ALJ Failed to Properly Credit the 100% Disability Rating Mr. Hicks

2    Received From the Department of Veterans Affairs

3                    Plaintiff next takes issue with the ALJ's decision to give the VA's disability rating

4    reduced weight.  The Veterans Affairs' decision, effective December 23, 2001, found plaintiff

5    100 percent disabled as a result of Reiter's Syndrome and bilateral hearing loss.  (Tr. at 206-19.)

6    Disability determinations by other government agencies are not binding on the Secretary.  20

7    CFR § 404.1504.  In the Ninth Circuit, "the ALJ may give less weight to a VA disability rating if

8    he gives persuasive, specific, valid reasons for doing so that are supported by the record."

9    McCartney v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

10                    Because the VA and SSA criteria for determining disability are not
                     identical, however, the ALJ may give less weight to a VA
11                   disability rating if he gives persuasive, specific, valid reasons for
                     doing so that are supported by the record.  See Chambliss, 269 F.3d
12                   at 522 (ALJ need not give great weight to a VA rating if he
                     "adequately explain[s] the valid reasons for not doing so").
13

14   Id. at 1076.

15                   In McCartney, the court found the ALJ erred in failing to consider the VA rating

16   of 80 percent disability and did not mention it in his opinion.  Here, in contrast, the ALJ

17   discussed his reasons for rejecting it.  He first pointed out that on January 29, 2002, an MRI of

18   both ankles was negative and ruled out any concern of a torn tendon.  Treatment records were

19   conservative and indicated that when plaintiff's cast was removed on April 12, 2002, pain and

20   swelling had decreased and plaintiff "felt he was cured."  (Tr. at 36.)  The ALJ further noted

21   plaintiff's intermittent ankle pain the following year, but explained that plaintiff was not taking

22   any medication at that time and was reportedly engaging in martial arts six days a week.  The

23   ALJ added that he was not bound by this disability decision, citing the regulation set forth above,

24   and based on the evidence he had set forth earlier in his opinion, he determined to give the

25   disability rating reduced weight.  (Id.)

26   \\\\\

7

1       Plaintiff asserts that the ALJ failed to reference a variety of other evidence

2 supporting the disability rating, and highlighted only evidence that detracted from disability.  For

3 example, plaintiff refers to a 2002 x-ray of the left foot indicating talonavicular arthritis and

4 dorsal breaking at the joint.  (Tr. at 326.)  As defendant correctly points out, however, the ALJ

5 did not reference this evidence because plaintiff was given a cast based on this x-ray; the cast

6 was then removed at plaintiff's direction, and as the ALJ *did* note, the symptoms were relieved

7 and plaintiff felt cured. (Id. at 36, 322.)

8       Plaintiff also refers to a physical therapy report following the removal of

9 plaintiff's cast which showed that plaintiff retained a slight limp after being in the cast for six

10 weeks, decreased range of motion and poor motor control.  This report, dated June 20, 2002,

11 does indeed make these findings.  (Tr. at 320.)  Nevertheless, plaintiff's condition was not

12 permanent and stationary at that time, which was approximately two months after his cast was

13 removed.  Nine months later, in March, 2003, plaintiff reported that he was "exercising 6

14 days/wk doing martial arts class and feeling very good and has lots of energy from taking class

15 and being careful about his diet."  (Id. at 318.)  It should also be noted that plaintiff had only one

16 medical visit for this problem during the interim nine month period between the aforementioned

17 appointments, during which plaintiff reported that the richie type brace helped his foot "a great

18 deal." (Id. 319-20.)  Plaintiff was continuing to do martial arts in August, 2003.  (Id. at 317.)

19 The ALJ was not required to mention every medical notation, especially that which reflected a

20 transitory condition.[3]  Although the ALJ is not required to discuss every piece of evidence, the

21 record does need to demonstrate that he considered all of the evidence, and in this case it does.

22 Cf. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (finding ALJ's summary conclusion

23 that appellant's impairments did not meet or equal any Listed Impairment was a bare conclusion

24

25    [3]  In regard to plaintiff's hearing loss, the record indicates that impressions for new
26 hearing aids were made on March 24, 2005, and on July 19, 2005, plaintiff was fitted with the
hearing aid.  (Tr. at 307, 310.)

1    beyond meaningful judicial review).  Furthermore, plaintiff's recovery during this nine month

2    period indicates that his condition did not last the requisite twelve continuous months.  In order

3    for disability to be found, the condition cannot be temporary and must be expected to last over at

4    least a twelve month period.  42 U.S.C. § 423(d)(1)(A).

5                  Plaintiff further contends that the ALJ failed to mention that by August, 2004,

6    plaintiff had not been exercising as he previously did.  (Tr. at 315.)  Plaintiff draws a

7    presumptive inference, however, that this statement indicates plaintiff's condition has worsened.

8    The record indicates nothing of the kind.  Plaintiff merely reported that he had not been

9    exercising regularly as he had in the past.  At this time, contrary to plaintiff's implication,

10   plaintiff reported that he was "healthy and doing well."  His low back pain was "under good

11   control."  (Id.)  Furthermore, since this was a general follow-up visit, plaintiff had the

12   opportunity to raise any concerns about his feet or ankle problems, and failed to do so, indicating

13   that he was not having any problems in that regard.

14                 Finally, as in Valentine v. Astrue, 574 F.3d 685, 695 (9th Cir. 2009), the ALJ had

15   more recent evidence before him that was not available to the VA.  The ALJ did not err by

16   assigning the VA disability finding less weight.

17                 The remainder of the record supported the ALJ's decision.  In addition to the

18   medical evidence outlined above, the ALJ relied on the treating records and the state agency

19   physician's interpretation of them in determining plaintiff's residual functional capacity.  Dr.

20   Wong found that plaintiff could do medium work based on his review of the records which was

21   quite thorough.  (Tr. at 344-46.)  Contrary to plaintiff's contention, the ALJ did not rely

22   exclusively on this non-examining physician to determine that plaintiff was not disabled.  The

23   VA treating records indicated relatively benign findings and conservative treatment.  In regard to

24   plaintiff's low back pain, the ALJ found that it had resolved within a year.  (Tr. at 36.)  Plaintiff

25   reported on August 25, 2003, that he had not suffered an injury to cause the pain, but that he had

26   been sleeping on a new bed, and that it was worse at night.  (Id., 317.)  Plaintiff was still taking

1  martial arts classes at this time.  (Id. at 317.)  An x-ray of the back on August 25, 2003, indicated

2  mild spurring, mild lumbar scoliosis, and minimal degenerative disc disease.  (Id. at 274.)  As

3  stated above, on August 11, 2004, plaintiff's back pain was under good control.  (Id. at 315.)

4          The ALJ acknowledged that the evidence reflected a worsening in plaintiff's

5  condition over time, but that for the pertinent time period at issue, the evidence reflected that

6  plaintiff's impairments were not so severe that he could not work through the date last insured.

7  (Tr. at 36.)

8          E.  Whether the ALJ Should Have Used a Vocational Expert Due to His Significant Non-

9  exertional Impairments

10         Plaintiff contends that the ALJ should have called a vocational consultant to

11 determine whether he could perform his past work, due to his pain, bilateral hearing loss,

12 postural limitations, manipulative limitations, need to elevate his leg, and need to be absent from

13 work four to five times per month.

14         The ALJ found that plaintiff could do his past work as sales route driver,

15 residence supervisor, warehouse worker, or bus driver, because these jobs did not require work

16 related activities precluded by plaintiff's residual functional capacity.  (Tr. at 37.)

17         Plaintiff bears the burden of proving he suffers from a physical or mental

18 impairment that makes him unable to perform "past relevant work."  Andrews v. Shalala, 53 F.3d

19 1035, 1040 (9th Cir.1995).  Plaintiff cannot merely show he is incapable of performing the

20 particular job he once did; he must prove he cannot return to the same type of work.  Villa v.

21 Heckler, 797 F.2d 794, 798 (9th Cir.1986).  In determining whether a disability applicant can

22 perform past work, the Commissioner may consider work as it was actually performed, or as it is

23 normally performed in the national economy.  The ALJ determines the demands of a past job and

24 compares the demands to current RFC.  Villa, 797 F.2d at 798.

25         Plaintiff cites Bruton v. Massanari, 268 F.3d 824 (9th Cir. 2001), for the

26 proposition that use of a vocational expert is mandatory where there is evidence of non-

10

1  exertional impairments.  That case, however, analyzed this issue at step five of the sequential

2  analysis:

> Our circuit has clearly delineated when it is appropriate for the
> Commissioner to rely on the grids in meeting the burden under
> Step Five of the five-part disability inquiry. [FN1 omitted] We
> have held that "[t]he Commissioner's need for efficiency justifies
> use of the grids at step five" but only when the grids "*completely*
> and *accurately* represent a claimant's limitations." Tackett v.
> Apfel, 180 F.3d 1094, 1101 (9th Cir.1999) (emphasis in original).
> "In other words, a claimant must be able to perform the full range
> of jobs in a given category" in order for the Commissioner to
> appropriately rely on the grids. Id.
>
> We have also held that "significant non-exertional impairments ...
> may make reliance on the grids inappropriate." Id. at 1101-02
> (citing Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d
> 573, 577 (9th Cir.1988)). A non- exertional impairment is an
> impairment "that limits [the claimant's] ability to work without
> directly affecting his [ ] strength." Desrosiers, 846 F.2d at 579.

12  Id. at 827-28.

13         This case concerns a step four analysis.  Therefore, plaintiff's argument is

14  inapposite.  In finding that plaintiff could return to his past work, the ALJ relied on the SSA

15  determination.  (Id. at 338-46.)  That reviewer found that plaintiff could do medium work.  (Id.)

16  This assessment was later affirmed by SSA Dr. Jackson.  (Id. at 352-53.)  The ALJ added the

17  environmental restriction of refraining from working in loud environments based on plaintiff's

18  hearing loss.  (Tr. at 37.)  Plaintiff's past work ranged from medium (bus driver, warehouse

19  worker, sales route driver) to sedentary (residence supervisor).  Plaintiff's claimed non-exertional

20  impairments have all been considered and rejected in the previous sections.  Dr. Lan is the

21  physician who imposed most of these limitations; however, his opinion was rendered years after

22  plaintiff's date last insured and was not required to be given weight, as explained *supra*.  The

23  ALJ was not required to call a vocational expert in this case.

24  \\\\\

25  \\\\\

26  \\\\\

1  CONCLUSION

2          Accordingly, IT IS ORDERED that:

3          1.  Plaintiff's Motion for Summary Judgment is denied, the Commissioner's Cross

4  Motion for Summary Judgment is granted, and judgment is entered for the Commissioner.

5          2.  Given the satisfactory showing made in the Declaration of Bess M. Brewer

6  (Doc. No. 20), the January 25, 2012 order to show cause why this case should not be dismissed

7  for lack of prosecution is discharged.

8  DATED: August 23, 2012

9                          /s/ Gregory G. Hollows
                    UNITED STATES MAGISTRATE JUDGE
10

   GGH/076/Hicks0148.ss.wpd
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26